## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JOSEPH H. HARRY, SR.          :    Civ. No. 3:21CV01355(SALM)
                              :
v.                            :
                              :
ANDREW J. MCDONALD, et al.    :    August 19, 2022
                              :
------------------------------x
```

### RULING ON MOTION TO DISMISS [Doc. #17]

Plaintiff Joseph H. Harry, Sr. ("plaintiff") brings this action against seven current or former members of the Connecticut Criminal Justice Commission, in their individual capacities: the Honorable Andrew J. McDonald; the Honorable Melanie L. Cradle; Robert Berke; Reginald Dwayne Betts; Scott Murphy; Richard J. Colangelo, Jr.; and Moy N. Ogilvie (collectively the "defendants"). See Doc. #1 at 3-4. Plaintiff alleges that defendants "refused to interview" him for three different jobs "because of his age in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." Doc. #1 at 14-15, ¶96. Plaintiff asserts three causes of action against all defendants for unlawful age discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See generally Doc. #1 at 15-23.

Defendants have filed a motion to dismiss the Complaint [Doc. #17]. Plaintiff has filed a memorandum in opposition to the motion to dismiss [Doc. #20], and defendants have filed a reply [Doc. #23]. For the reasons stated below, defendants' Motion to Dismiss [**Doc. #17**] is **GRANTED, without prejudice to the filing of an Amended Complaint.**

## I.  FACTUAL BACKGROUND

For purposes of deciding the motion to dismiss, the Court presumes the following factual allegations from the Complaint [Doc. #1] to be true.

### A.  Plaintiff's Background

Plaintiff was born on August 6, 1957, making him 62 to 63 years old at the time of the interview selection processes. See Doc. #1 at 2, ¶7. "[P]laintiff holds a Bachelor of Science Degree, with a major in Criminal Justice/Political Science, and a Master of Arts Degree in Legal Studies" from the University of New Haven. See id. at 5, ¶29. Plaintiff also holds a Juris Doctor ("J.D.") degree from the University of Bridgeport School of Law. See id. at 5, ¶30. Plaintiff is licensed to practice law in the State of Connecticut. Id. at 5, ¶31.

Prior to becoming an attorney, plaintiff worked as a police officer from 1978 through 1989. See id. at 5, ¶¶32-33. After receiving his J.D., plaintiff briefly worked for the United States Immigration and Naturalization Service, before beginning

his employment with the Connecticut State Division of Criminal Justice as a Senior Assistant State's Attorney in 1990. See id. at 5, ¶¶34-36. Plaintiff "currently holds" that same position. Doc. #1 at 5, ¶57.

Plaintiff has also "had a distinguished military career, honorably serving in the United States Army Reserve, from 1991 through 2017, when he retired holding the rank of Lieutenant Colonel." Id. at 5-6. While in the Reserve, plaintiff attended the Army Command and General Staff College and the Army Inspector General's School. See id. at 6, ¶¶39-40. At various times during his service, plaintiff was assigned to the Judge Advocate General Corps and the United States Army Reserve Inspector General's Corps. See id. at 6, ¶¶41-42.

B.   The Chief State's Attorney Position

"On or about January 31, 2020," defendants appointed Richard J. Colangelo, Jr. ("Colangelo") as Chief State's Attorney for the State of Connecticut. Id. at 7, ¶44.[1] "When the defendants ... posted a notice that it was accepting applications for the position of Chief State's Attorney from qualified candidates, the plaintiff submitted his application along with five other candidates." Id. at 7, ¶45 (sic). After

---

[1] Colangelo, who is also a former member of the Commission and a named defendant, did not participate in this selection process. See Doc. #1 at 7, ¶43.

one of the applicants withdrew his application, defendants interviewed four of the five remaining applicants for this position. See Doc. #1 at 7, ¶¶46-47. Plaintiff was the only applicant for this position who was not offered an interview, even though he possessed the necessary qualifications to serve as the Chief State's Attorney. See id. at 7, ¶¶48-49. Plaintiff alleges that his "experience, skills, and abilities exceeded those of the candidates" that were interviewed, and that those candidates "were substantially younger than the plaintiff." Id. at 8, ¶¶51-52. Defendants selected Colangelo, who is substantially younger and less qualified than plaintiff, for the Chief State's Attorney position. Id. at 8, ¶54, ¶57.

    C.   State's Attorney for the Judicial District of
           Fairfield, Connecticut

"On or about May 1, 2020," defendants appointed Joseph T. Corradino ("Corradino") as State's Attorney for the Judicial District of Fairfield, Connecticut. Id. at 9, ¶59. "When the defendants ... posted a notice that it was accepting applications for the position from qualified candidates, the plaintiff submitted his application along with seven other candidates." Id. at 9, ¶60 (sic). Defendants interviewed five out of eight applicants for this position. See id. at 9, ¶¶61-62. "Except for Robert Satti, the candidates" interviewed by

defendants "were substantially younger than the plaintiff." Id. at 9, ¶63.

Plaintiff was not offered an interview by defendants, even though he was qualified to serve in this position. See Doc. #1 at 9, ¶¶64-65. Plaintiff alleges that his "experience, skills, and abilities exceeded those of the candidates" interviewed. Id. at 10, ¶66. Defendants selected Corradino, who is substantially younger and less qualified than plaintiff, for the position of State's Attorney for Fairfield County. Id. at 10, ¶68, ¶71.

D.   Deputy Chief State's Attorney/Inspector General

"On or about September 2020," defendants sought applications for the position of Deputy Chief State's Attorney/Inspector General (hereinafter the "Deputy Chief"). Id. at 11, ¶73. "When the defendants ... posted a notice that it was accepting applications for the position of Deputy Chief ... from qualified candidates, the plaintiff submitted his application along with three other candidates." Id. at 11, ¶74 (sic). Defendants interviewed two out of four applicants for this position, including Robert Satti. See id. at 11, ¶¶75-76. "Except for Robert Satti, the other candidate" interviewed for this position "was substantially younger than the plaintiff." Id. at 11, ¶77.

Plaintiff was not offered an interview for this position even though he was qualified to serve as Deputy Chief. See id.

at 12, ¶¶78-80. Plaintiff alleges that his "experience and qualifications exceeded those of the candidates the defendants" interviewed, including one applicant who was "substantially younger" than plaintiff. Doc. #1 at 12, ¶82; see also id. at 12, ¶84, ¶87.

Defendants later held a second round of interviews for the Deputy Chief position, but again did not interview plaintiff. See id. at 13, ¶89. The four applicants interviewed in the second round of interviews were not more qualified than plaintiff and were substantially younger than plaintiff. See id. at 13-14, ¶¶90-91.

Plaintiff "was eminently qualified for the three positions, ... but the defendants, without a legitimate, rational, non-discriminatory reason, refused to consider the plaintiff for any of the three positions." Id. at 14, ¶93. "By refusing to interview" him for these positions, "defendants barred the plaintiff from being appointed to any of the positions." Id. at 14, ¶95. Defendants "refused to interview the plaintiff for the three positions ... because of his age in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." Id. at 14-15, ¶96.

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021). In reviewing such a motion, the Court "must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." Kaplan, 999 F.3d at 854 (citations omitted). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

"[W]hile this plausibility pleading standard is forgiving, it is not toothless. It does not require [the Court] to credit legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (citation and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (citations and quotation marks omitted).

III. __DISCUSSION__

Defendants move to dismiss the Complaint on four grounds: (1) plaintiff fails to state a section 1983 Equal Protection claim; (2) plaintiff fails to allege personal involvement of each named defendant; (3) defendants are entitled to qualified immunity because they acted in an objectively reasonable manner; and (4) defendants are entitled to qualified immunity because it is not clearly established that plaintiff had a right to an interview under the circumstances presented. See generally Doc. #17 at 8-18. Plaintiff's memorandum in opposition to the motion to dismiss is rambling and the argument is difficult to follow. However, plaintiff appears to contend that he has pled a prima facie case of discrimination and that defendants are not entitled to qualified immunity. See generally Doc. #20. In reply, defendants note that plaintiff fails to address the issue of personal involvement, and reassert that defendants are entitled to qualified immunity. See generally Doc. #23. The Court first considers whether plaintiff has adequately alleged the personal involvement of each defendant in the alleged constitutional violations.

A.   Personal Involvement

Defendants assert that plaintiff's section "1983 claims against the individual defendants in their individual capacities must be dismissed because he has not set forth sufficient

allegations to establish the individual defendants' personal involvement in the alleged violations." Doc. #17-1 at 11. Plaintiff does not respond to this argument.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (citation and quotation marks omitted). "As a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." Gonzalez v. Yepes, No. 3:19CV00267(CSH), 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (citation and quotation marks omitted).

Plaintiff relies on inappropriate group pleading. Although plaintiff identifies the defendants individually at the outset of the Complaint, see Doc. #1 at 3-4, he otherwise refers exclusively to "defendants" throughout the Complaint.[2] "Plaintiff provides absolutely no detail about these individuals apart from the fact that they sit on the [Commission]; otherwise, he complains that the [Commission] writ large violated his rights.

---

[2] The only exceptions are paragraphs 45 through 63, which "refer[] to the named defendants except for Colangelo, who could not participate in the selection of Chief State's Attorney." Doc. #1 at 7, ¶43.

Failing to explain what each [Commission] Member did to violate Plaintiff's rights is fatal to any claim under 42 U.S.C. §1983 because such allegations rely on impermissible group pleading." Williams v. Novoa, No. 19CV11545(PMH), 2022 WL 161479, at *10 (S.D.N.Y. Jan. 18, 2022).

In section 1983 actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The allegations of the Complaint fail to adequately allege the personal involvement of each individual defendant. Merely serving as a member on a commission that made an allegedly discriminatory hiring decision does not render every individual member personally responsible or personally liable for that decision. Indeed, if plaintiff were to prevail against a given defendant, that defendant would be found to have personally and individually violated plaintiff's Equal Protection rights, and would be personally liable for monetary damages. Even if the effect of defendants' actions is felt collectively by plaintiff, defendants' liability for damages can only be personal.

There are no allegations of any personal, individual actions taken by any individual defendant. Accordingly, defendants' motion to dismiss is **GRANTED**. See, e.g., Williams, 2022 WL 161479, at *10 (dismissing section 1983 action against

individual Parole Board Members where plaintiff "fail[ed] to explain what each Board Member did to violate Plaintiff's rights"); Johnson v. City of New York, No. 1:15CV08195(GHW), 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017) (dismissing section 1983 claim where plaintiff "fails to satisfy the personal-involvement requirement because she relies entirely on impermissible group pleading and fails to specify which defendant or defendants were involved" (footnote omitted)).

The Complaint is **DISMISSED, without prejudice,** for failure to adequately allege the personal involvement of defendants. If plaintiff seeks to re-assert these claims in an Amended Complaint, he must allege specific facts from which each named defendant's personal involvement in a constitutional violation can reasonably be inferred. The Court notes that discovery has now been underway for some time, so plaintiff should have additional information regarding the actions of each defendant.

B.   Equal Protection Claims

Plaintiff has failed to adequately allege the personal involvement of defendants. However, plaintiff may elect to file an Amended Complaint; the Court therefore addresses defendants' remaining arguments in the interest of efficiency. The Court next considers whether the substantive allegations of the Complaint state a claim upon which relief may be granted.

Plaintiff asserts three claims for violation of the Equal Protection Clause of the Fourteenth Amendment on the basis of "unlawful age discrimination[.]" Doc. #1 at 15 (capitalizations altered); see also id. at 18, 21. Defendants assert that "plaintiff's Equal Protection claim must be based on selective enforcement alone[]" because "[a]ge is not a protected class under the Fourteenth Amendment[,]" and "[a] public employee cannot bring a class of one claim." Doc. #17-1 at 8. Plaintiff responds, in relevant part, that "defendants mischaracterize the plaintiff's cause of action ... the plaintiff has neither alleged a 'class of one' claim nor that he was the victim of 'selective enforcement.' He specifically alleges that his constitutional right to equal protection of the laws was violated by the defendants' acts of irrational age discrimination." Doc. #20 at 18. Plaintiff also contends that courts in this Circuit "have consistently recognized causes of action based on claims of age discrimination brought pursuant to" section 1983. Id. at 20.[3] Defendants do not address this

---

[3] Plaintiff argues that the ADEA does not preempt his section 1983 claims. See Doc. #20 at 22-24. "It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983." Piccone v. Town of Webster, 511 F. App'x 63, 64 n.1 (2d Cir. 2013). Defendants do not raise this as an independent basis for dismissal, but only in connection with their qualified immunity defense. Because the Court finds that the issue of qualified immunity is better resolved at summary judgment, the Court does not further address this "open question[.]" Id.

aspect of plaintiff's argument in their reply brief. <u>See</u>
<u>generally</u> Doc. #23.

Certain courts in this Circuit have indicated that "[a]ge
is not a protected class under the Fourteenth Amendment's Equal
Protection Clause." <u>Leon v. Rockland Psychiatric Ctr.</u>, 232 F.
Supp. 3d 420, 431 (S.D.N.Y. 2017) (citation and quotation marks
omitted); <u>see also</u> <u>Chizman v. Scarnati</u>, 218 F. Supp. 3d 175, 181
(E.D.N.Y. 2016). These same courts have concluded: "Where the
plaintiff does not allege he is a member of a protected class,
his Equal Protection claim may only be based on two theories:
selective enforcement or class of one." <u>Chizman</u>, 218 F. Supp. 3d
at 181 (citation and quotation marks omitted); <u>see also</u> <u>Leon</u>,
232 F. Supp. 3d at 431 (same). In the view of the undersigned,
this line of decisions does not accurately reflect the current
state of the law.

In concluding that age is not a "protected class," this
line of cases generally relies on <u>Shein v. New York City</u>
<u>Department of Education</u>, No. 15CV04236(DLC), 2016 WL 676458
(S.D.N.Y. Feb. 18, 2016). <u>Shein</u>, in turn, relies on the Supreme
Court decision of <u>Kimel v. Florida Board of Regents</u>, 528 U.S.
62, 83 (2000), for the following proposition: "Age is not a
protected class under the Fourteenth Amendment's Equal
Protection Clause." <u>Shein</u>, 2016 WL 676458, at *6. <u>Kimel</u> does not
support that statement.

*Kimel* states that "age is not a suspect classification under the Equal Protection Clause." *Kimel*, 528 U.S. at 83 (emphasis added).[4] The paragraph immediately following that statement acknowledges that "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Id.* (emphases added). In contrast, where a state discriminates based on membership in a suspect class, a higher standard of review applies; "we require a tighter fit between the discriminatory means and the legitimate ends they serve." *Id.* at 83.

Thus, a plaintiff may bring an Equal Protection claim based on age, but "because an age classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation and quotation marks omitted). *Kimel* does not stand for the blanket proposition that discrimination based on age cannot violate the Equal Protection Clause, but rather, that age is not a suspect class.

---

[4] The court in *Pejovic v. State Univ. of N.Y. at Albany* also noted *Shein*'s misplaced reliance on *Kimel* for the proposition that age is not a "protected" class. *See Pejovic*, No. 1:17CV1092(TJM)(DTS), 2018 WL 3614169, at *5 n.5 (N.D.N.Y. July 26, 2018).

See Neary v. Gruenberg, 730 F. App'x 7, 9–10 (2d Cir. 2018)
("Because age is not a suspect class, age-based discrimination
does not offend equal protection 'if the age classification in
question is rationally related to a legitimate [government]
interest.'" (quoting Kimel, 528 U.S. at 83)), as amended (Apr.
5, 2018). This affects the level of scrutiny applied to state
action, not the viability of the claim itself.

The Supreme Court's "equal protection jurisprudence has
typically been concerned with governmental classifications that
affect some groups of citizens differently than others."
Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008); see
also Fierro v. City of New York, No. 1:20CV09966(GHW), 2022 WL
428264, at *7 (S.D.N.Y. Feb. 10, 2022) ("The Fourteenth
Amendment[] ... offers some level of protection against all
discrimination, stating that no state shall deny to any person
within its jurisdiction the equal protection of the laws."
(citation and quotation marks omitted)). Thus, although age is
not a suspect or quasi-suspect class, an individual is "still
afforded limited protection" from discrimination on the basis of
age. Fierro, 2022 WL 428264, at *7; see also Purdy v. Town of
Greenburgh, 166 F. Supp. 2d 850, 868 (S.D.N.Y. 2001) ("Because
age is not a suspect class, the Equal Protection Clause only
requires a rational basis for discrimination on the basis of
age."), on reconsideration in part, 178 F. Supp. 2d 439 (2002);

Goodmaster v. Town of Seymour, No. 3:14CV00060(AVC), 2015 WL
1401966, at *6 n.8 (D. Conn. Mar. 26, 2015) ("[I]t is well-
established that states may not discriminate on the basis
of age if the age classification is not rationally related to a
legitimate state interest."). Thus, "the Equal Protection Clause
still applies to public employees, and ... 'is implicated when
the government makes class-based decisions in the employment
context, treating distinct groups of individuals categorically
differently.'" Volpi v. Ctr. Moriches Union Free Sch. Dist., 9
F. Supp. 3d 255, 258 (E.D.N.Y. 2014) (quoting Engquist, 553 U.S.
at 605).

Courts in the Second Circuit have routinely recognized
claims for age discrimination asserted pursuant to section 1983.
See, e.g., Spain v. Ball, 928 F.2d 61, 63 (2d Cir. 1991)
("Because Spain's equal protection claim is based on a theory
of age discrimination, the proper standard of review is the
rational basis test."); Pejovic, 2018 WL 3614169, at *5-6;
Markovich v. City of New York, No. 09CV05553(ENV)(CLP), 2013 WL
11332465, at *10 (E.D.N.Y. Aug. 21, 2013), aff'd, 588 F. App'x
76 (2d Cir. 2015); Weinstein v. Garden City Union Free Sch.
Dist., No. 11CV02509(AKT), 2013 WL 5507153, at *20 (E.D.N.Y.
Sept. 30, 2013); Anand v. N.Y. State Dep't of Tax'n & Fin., No.
10CV05142(SJF)(WDW), 2013 WL 3874425, at *12 (E.D.N.Y. July 25,
2013); Purdy, 166 F. Supp. 2d at 868; Natale v. Town of Darien,

Conn., No. 3:97CV00583(AHN), 1998 WL 91073, at *4 (D. Conn. Feb. 26, 1998). Thus, defendants' argument that plaintiff cannot proceed with an age discrimination claim pursuant to the Equal Protection Clause is without merit. The Court next considers whether the allegations of the Complaint state a claim for age discrimination in violation of the Equal Protection Clause pursuant to section 1983.[5]

"Age-based employment discrimination claims brought pursuant to §1983 are analyzed under the three-step, burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)." Burkhardt v. Lindsay, 811 F. Supp. 2d 632, 651 (E.D.N.Y. 2011); see also Sorlucco v. New York City Police Dep't, 888 F.2d 4, 6–7 (2d Cir. 1989) ("The Supreme Court has outlined a three-step analysis of factual issues in Title VII claims. By analogy, the same analysis applies to claims under section 1983." (citations omitted)). Absent direct evidence of discrimination, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member

---

[5] "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Complaint pleads these basic requirements of a section 1983 claim. However, as previously discussed, the Complaint does not adequately allege the personal involvement of each defendant.

of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015). At the motion to dismiss stage, the facts alleged "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." <u>Id.</u>[6]

For each of the three counts asserted, plaintiff has adequately alleged that he is a member of a protected class, having been 62 to 63 years old at the time of the events in question. <u>See</u> Doc. #1 at 2, ¶7; <u>see also</u> <u>Kunik v. New York City Dep't of Educ.</u>, 436 F. Supp. 3d 684, 693 (S.D.N.Y. 2020) ("The record establishes that Plaintiff is a member of a protected class, as the parties stipulate that she is a 69-year-old Jewish female, satisfying the first prong of the analysis for both age and religious discrimination."), <u>aff'd</u>, 842 F. App'x 668 (2d Cir. 2021), <u>as amended</u> (Jan. 26, 2021), <u>cert. denied</u>, 142 S. Ct. 786, (2022), <u>reh'g denied</u>, 142 S. Ct. 1403, (2022).

---

[6] "Although Plaintiff need not allege facts sufficient to make out a <u>prima facie</u> case for any of h[is] discrimination claims in h[is] Complaint, the elements thereof provide an outline of what is necessary to render h[is] claims for relief plausible." <u>Sommersett v. City of New York</u>, No. 09CV05916(LTS)(KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

Plaintiff has also alleged adequate facts to support an
inference that he was qualified for each of the three positions,
including, but not limited to, his lengthy experience as a
prosecutor and police officer. See Doc. #1 at 5-6, ¶¶29-42; id.
at 8, ¶56; id. at 10, ¶70; id. at 12, ¶¶79-81.

Plaintiff has also adequately alleged that he suffered an
adverse employment action because defendants did not extend him
an interview for any of the three positions, thereby eliminating
him from hiring consideration. See id. at 7, ¶¶48-49; id. at 8,
¶53, ¶55; id. at 9, ¶64; id. at 10, ¶69; id. at 11, ¶72; id. at
12, ¶78; id. at 13, ¶85, ¶88; see also Szewczyk v. Saakian, 774
F. App'x 37, 38 (2d Cir. 2019) (The plaintiff stated an
analogous ADEA age discrimination claim where, inter alia, she
"was not selected to advance in the interview process[.]");
Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301,
310 (S.D.N.Y. 2015) (The term adverse employment action is
"broadly" defined "to include discharge, refusal to hire,
refusal to promote, demotion, reduction in pay, and
reprimand.").

Plaintiff has not, however, pled adequate facts to "give
plausible support to a minimal inference of discriminatory
motivation." Littlejohn, 795 F.3d at 311. As to each count
asserted, plaintiff has adequately pled that a younger and less
qualified applicant proceeded further in the application process

than plaintiff. See, e.g., White v. Huntington, No.
14CV07370(ST), 2021 WL 826221, at *7 (E.D.N.Y. Mar. 4, 2021)
("In the failure to hire context, an employer's choice of a less
qualified employee not from plaintiff's protected class raises
an inference of discrimination sufficient to establish a prima
facie case of discrimination." (citation and quotation marks
omitted)). However, plaintiff fails to plead that any defendant
had knowledge of the applicants' ages. In a comparable ADEA
case, the Second Circuit found that "where a plaintiff relies on
a substantial age discrepancy between herself and her
replacement, she must adduce some evidence indicating
defendants' knowledge as to that discrepancy to support the
inference of discriminatory intent required by the fourth prima
facie factor. ... [D]iscriminatory intent cannot be inferred,
even at the prima facie stage, from circumstances unknown to the
defendant." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82–83 (2d
Cir. 2005). Likewise in an Equal Protection case, discriminatory
intent cannot be inferred from circumstances unknown to a
defendant. Compare, e.g., Largo v. Vacco, 977 F. Supp. 268, 274
(S.D.N.Y. 1997) ("In the absence of ... knowledge [that
plaintiff belonged to a certain group], plaintiffs cannot
establish the discriminatory intent required to make out
an Equal Protection claim."), with Sughrim v. New York, 503 F.
Supp. 3d 68, 91 (S.D.N.Y. 2020) ("Plaintiffs have also alleged

that Defendants acted with discriminatory intent by singling them out with the <u>knowledge</u> that shaving would violate their religious beliefs, and by making derogatory remarks, such as the questioning of Gleixner's Muslim faith." (emphasis added)). Accordingly, plaintiff has failed to plead adequate facts to support a minimal inference of discrimination.

Last, in the "Prayer for Relief," plaintiff asks the Court to "[d]eclare the conduct engaged by the defendant to be in violation of the plaintiff's rights under the Equal Protection Clause of the Fourteenth Amended to the United States Constitution[,]" and to "[e]njoin the defendant from engaging in such conduct." Doc. #1 at 23 (sic). Plaintiff sues defendants in their individual capacities only. <u>See</u> <u>id.</u> at 1, 3-4. "Injunctive relief is not available from defendants in their individual capacities[.]" <u>Patterson v. Lichtenstein</u>, No. 3:18CV02130(MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). The declaratory relief sought is unnecessary. <u>See</u> <u>Kuhns v. Ledger</u>, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) ("Dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." (citation and alterations omitted)). Additionally, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." <u>Orr v. Waterbury Police Dep't</u>, No. 3:17CV00788(VAB), 2018 WL

780218, at *7 (D. Conn. Feb. 8, 2018). Plaintiff's requests for declaratory relief are based solely on his <u>past</u> treatment by defendants. Accordingly, plaintiff's requests for injunctive and declaratory relief are **DISMISSED, with prejudice, as against the individual defendants in their individual capacities.**

    C.   <u>Qualified Immunity</u>

    Finally, defendants assert that they are entitled to qualified immunity because they acted objectively reasonably, <u>see</u> Doc. #17-1 at 12-14, and "because it is not clearly established that the plaintiff has a right under the Equal Protection Clause to be interviewed when individuals who are the same age or older were interviewed by the defendants." <u>Id.</u> at 14; <u>see also</u> Doc. #23 at 5-6.

    The motion to dismiss was filed well before the parties engaged in any meaningful discovery. The Court finds that the more appropriate time for determining the issue of qualified immunity is on a motion for summary judgment. <u>See, e.g.,</u> <u>Interboro Inst., Inc. v. Maurer</u>, 956 F. Supp. 188, 201 (N.D.N.Y. 1997) ("[T]he standard for determining qualified immunity in federal court, was designed to facilitate resolution of the defense on a motion for summary judgment." (citation and quotation marks omitted)); <u>see also</u> <u>Purdy</u>, 166 F. Supp. 2d at 869 ("Here, there is no dispute that age discrimination is contrary to clearly established federal law.").

Accordingly, defendants' motion to dismiss on the grounds of qualified immunity is **DENIED, without prejudice.** Defendants may reassert this defense at summary judgment, if appropriate.

## IV.   <u>CONCLUSION</u>

For the reasons stated, defendants' Motion to Dismiss [**Doc. #17**] is **GRANTED, without prejudice to the filing of an Amended Complaint.**

Any Amended Complaint must be filed on or before **September 9, 2022**, or this case will be closed.

It is so ordered at Bridgeport, Connecticut, this 19th day of August 2022.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
